UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANDRE T PARKER,

                              Petitioner,

          v.

MIKE OBENLAND,

                              Respondent.

CASE NO. 3:14-CV-05303-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: NOVEMBER 20, 2015

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge, J. Richard Creatura. The authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner seeks relief from a state conviction, thus, the petition is filed pursuant to 28 U.S.C. § 2254.

Petitioner Andre Parker seeks § 2254 habeas relief from his 2010 convictions by jury verdict for attempted first degree murder. Dkt. 4; Dkt. 19. Petitioner raises three grounds for relief including insufficient evidence, admission of prejudicial evidence and prosecutorial misconduct. Dkt. 4. Respondent argues that petitioner failed to properly exhaust any of his claims. Dkt. 18.  The Court ordered respondent to expand the record with additional state court

REPORT AND RECOMMENDATION - 1

1   documents as to the issue of incorporation by reference and allowed respondent to supplement

2   his answer. Dkt. 21. Respondent filed his supplemental answer and the supplemental state court

3   record. Dkts. 23, 24, 25, 26. Respondent's supplemental answer argues that incorporation by

4   reference did not exhaust petitioner's claims but that even if petitioner sufficiently exhausted

5   ground one, petitioner's claim fails on the merits. Dkt. 24 at 7.  Petitioner did not file a reply.

6          In this case, petitioner's incorporation by reference of the relevant facts and legal

7   arguments from his co-defendants' briefs did not fairly exhaust the appellate review process, as it

8   did not fully apprise the state court of petitioner's federal constitutional claims nor give the state

9   a full opportunity to respond to the claims.  As a result, petitioner failed to fairly present grounds

10  one, two, and three under federal law by invoking one complete round of Washington state court

11  appellate review and, therefore, has not exhausted his state remedies. Furthermore, petitioner has

12  already filed one personal restraint petition and does not demonstrate cause and prejudice or a

13  fundamental miscarriage of justice; therefore, he is procedurally barred from filing another

14  collateral challenge. Accordingly, the undersigned recommends dismissing grounds one, two,

15  and three as unexhausted and procedurally barred.

16         Although this Court recommends that ground one be dismissed because petitioner failed

17  to exhaust the claim, because this is a close question, the Court also evaluated the merits of

18  ground one and finds that petitioner failed to show that the state appellate courts' adjudication of

19  ground one was contrary to, or an unreasonable application of, clearly established federal law.

20  The undersigned also recommends denying the issuance of a certificate of appealability.

21                    **OVERLENGTH SUPPLEMENTAL ANSWER**

22         As an initial matter, when the Court ordered respondent to provide the appellate brief of

23  co-defendant Randall Embry, the Court further stated that respondent could supplement his

24

answer with an additional four pages of briefing to be within the 24-page limit, citing Local Rule 7(e). Dkt. 21. In respondent's supplemental answer, he contends that Local Rule 7 does not apply to answers. Dkt. 24. at 2. Further, respondent states that he found it necessary to exceed the four-page limit in his supplemental answer and requests that the Court accept all additional pages. *See id.*

The Court finds that Local Rule 7 does apply to responses or answers to habeas petitions because this Court's previous order directing service said it applied. As stated in the Court's order directing respondent to file an answer:

> (2) Within ***forty-five (45) days*** after such service, respondent(s) shall file and serve an answer in accordance with Rule 5 of the Rules Governing Section 2254 Cases in United States District Courts. As part of such answer, respondent(s) shall state whether petitioner has exhausted available state remedies and whether an evidentiary hearing is necessary….
>
> ***(3) The answer will be treated in accordance with LCR 7.***

Dkt. 8 at 2 (*Emphasis added to subsection (3)*). However, upon review of the record and the previously filed answer, the Court finds good cause for permitting an over-length answer. The petition contains multiple claims and Rule 5(b) of the Rules Governing Section 2254 Cases provides that the "answer must address the allegations in the petition." Accordingly, the Court grants respondent's request to consider all pages of his supplemental answer (Dkt. 24).

## BASIS FOR CUSTODY AND FACTS

Petitioner was convicted by jury verdict of attempted first degree murder committed on February 24, 2009. Dkt. 19, Exhibit 1. He was sentenced to 351 months of confinement and 36 months of community custody. *Id.*

The Washington Court of Appeals summarized the facts in petitioner's case as follows:

In the early morning of New Year's Day 2009, at the 54th Street Bar and Grill in Tacoma, a fight broke out between Andre Parker and Michael Nelson, Tyrick Clark's friend. Clark and another friend, "Cornelius," observed the fight; and, according to Clark, Parker swung at Cornelius. Clark then retaliated, hitting Parker in the mouth. Parker was a member of the Hilltop Crips, a Tacoma street gang; Clark was a member of the Young Gangster Crips (YGC).

On February 23, 2009, Clark and Nicole Crimmins went to McCabe's, a Tacoma nightclub. Clark saw Parker at McCabe's that night, and although he did not interact with Parker that night, Clark's impression was that the two had not resolved their issues stemming from their New Year's morning fight.[1] Curtis Hudson, a McCabe's patron, confirmed that he understood Parker and Clark had a "beef" with one another stemming from their earlier fight. 6 Verbatim Report of Proceedings (VRP) at 908.

Embry and Morgan, two Hoover Crip gang members, also visited McCabe's that night. Clark did not know Embry or Morgan. While at McCabe's, Clark visited with an acquaintance about the New Year's morning fight with Parker, and Embry briefly approached and tried to interject himself into Clark's conversation. Later that night, as he descended a McCabe's stairwell, Clark inadvertently kicked Embry's shoe as Embry visited on the stairs with Morgan.

Just before closing, Clark and Crimmins left McCabe's and walked toward their vehicle, which was parked along an adjacent street. As they neared their vehicle, a man wearing a hoody—later identified by Crimmins and Clark as Embry—approached them from behind another car parked along the same street. As Clark and Crimmins were about to pass Embry, Embry pulled out a gun and shot Clark several times. As Clark fell to the ground, Embry went to a nearby car. Embry entered the car's backseat. Crimmins followed Embry, called 911, and relayed the car's description and license plate number to the dispatcher.

As Embry departed, off-duty Tacoma police officers Scott Stanley and David Fischer, both moonlighting at McCabe's, arrived at the scene.[2] An emotional Crimmins initially told the officers that the shooter got into a white Caprice with license plate number 698-YNT. After she calmed down, she described the car as a "silver Ford Escort-type vehicle." 2 VRP at 268.

Other witnesses also heard the gunshots. Telon Walker, Clark's cousin, was standing outside McCabe's when he heard the gunshots. He turned toward the gunshots, saw Crimmins and a body on the ground, and ran in that direction. Walker witnessed a 2006 to 2008 four-door "grayish, light mauve, tan color"

---

[1] [State court's footnote] Clark's testimony is ambiguous. He said, "[T]he impression I was under the only person I was still mad at was Mr.—was [Parker]." 4 Verbatim Report of Proceedings ("VRP") at 602.

[2] [State court's footnote] Officer Stanley estimated that it took just 15 seconds, from the time he heard gunfire, to arrive at the shooting scene.

Impala drive away from the scene. 5 VRP at 768. Before the car departed, he saw two men get into the car: one wearing a red hoody climbed into the rear, passenger side, and one wearing a dark hoody climbed into the rear, driver side. Walker added that earlier he had seen Morgan wearing the red hoody at McCabe's. Following the gunshots, Hudson witnessed a man in a "red sweatshirt, hoody sweatshirt" running away from the shooting. 6 VRP at 913. He recognized the red sweatshirt as that which Morgan wore that evening. Manuel Hernandez also turned toward the gunfire immediately after hearing shots. He saw a man with a "five-point star" tattoo on his neck,[3] Embry, running from the shooting scene with another man. 6 VRP at 974. Embry carried a gun in his right hand.

SECURITY VIDEO FOOTAGE

McCabe's surveillance cameras partially captured the events in and around McCabe's. At 11:36 p.m. Embry entered McCabe's. Shortly after midnight, Morgan and Parker entered together. Parker wore a gray, blue, and white jacket with a hood; blue jeans; and white shoes. Morgan wore a red hoody. Embry wore a black and white hoody and a Houston Astros baseball cap. Video footage depicts Parker, Embry, and Morgan interacting with each other, as well as with others. Between 1:48 and 1:52 a.m., the three left McCabe's and visited in front of McCabe's. Clark exited the club at 1:51 a.m.

Embry and Morgan then jogged out of the picture toward Clark's parked van. Parker followed, walking in the same general direction. Then, at 1:53 a.m., Clark and Crimmins walked together in that same direction toward Clark's vehicle. Almost two minutes after Clark and Crimmins left, walking toward their vehicle, everyone in front of McCabe's turned their heads toward the direction that Parker, Embry, Morgan, Crimmins, and Clark had all gone. The cameras did not capture the shooting.

STOLEN VEHICLE REPORT

Within seconds of the shooting, Crimmins had provided officers the license plate number on the getaway car, 698-YNT; and, authorities alerted officers to watch for this vehicle. Less than two hours after the shooting, Tacoma Police Officer Mikael Johnson received a stolen vehicle report filed by Parker for a rented, dark gray or silver 2009 Chevy Impala with license plate number 648-YNT. Officer Johnson noted that this vehicle appeared "similar in description and license plate number to a vehicle from the McCabe shooting." 5 VRP at 851.

Parker told Officer Johnson that he had parked the rented vehicle in front of his girlfriend's apartment at 1:15 a.m. and left it running while he went upstairs.

---

[3] [State court's footnote] Hernandez described the tattoo as a "[f]ive-point star with 'H' in it." 6 VRP at 975. Tacoma Police Detective John Ringer testified that both Hilltop Crips and Hoover Crips wear this symbol, described as the Houston Astros logo.

When he returned to the parking lot, the vehicle was gone. Parker claimed he had not reported it stolen until after 3:00 a.m. because it was a rental, and he needed to contact the rental company to obtain the vehicle's license plate and VIN numbers.

Parker's story, however, differed from that of his girlfriend, Christine Borland, who testified that in the early morning on February 24, while she slept at her apartment, Parker called and asked her to pick him up "from Chevron or McDonald's off 512." 6 VRP at 1036. Borland picked up Parker, and, while returning to the apartment, Parker told her "[s]omething bad happened" at McCabe's and that someone stole his car. 6 VRP at 1041. After returning to Borland's apartment, Borland went to sleep, and Parker reported his rental car stolen.

Borland testified that she had initially lied during the investigation when she said one of Parker's friends drove him back to Borland's apartment after McCabe's. But feeling guilty about lying to detectives, Borland corrected her story to reflect that she had "picked him up off 512." 6 VRP at 1060. According to Detective John Ringer, though, even Borland's testimony differed from what she told him during an investigative interview. Borland told Detective Ringer during an interview that Parker told her to tell police that he had been at her apartment at 1:00 a.m. and that the car was stolen there. Detective Ringer confirmed, however, that Borland corrected her story to reflect that Parker requested she pick him up at McDonald's off Highway 512. On March 10, 2009, Kent police located Parker's rented four-door Chevrolet Impala, license number 648-YNT, in the Green River.

Procedure

The State charged Embry, Parker, and Morgan with attempted first degree murder with a firearm sentencing enhancement, as well as unlawful possession of a firearm. It also charged Embry with conspiracy to commit first degree murder.

Before trial, the defendants sought to exclude evidence of their gang affiliations. In an offer of proof, the State asserted that the defendants knew each other and had associated for some time. The State asserted that the gang evidence linked Embry, Parker, and Morgan because their gangs were known to associate and work in concert. Specifically, the State offered that Parker, a Hilltop Crip, was still upset about the New Year's morning fight between YGCs and Hilltop Crips. The State argued that its evidence would show that Parker was still angry at Clark and sought members of King County's Hoover Crips, an allied gang, to retaliate against Clark, a YGC. The State also asserted that the video footage would show the defendants associating at McCabe's and in front of the club before Embry and Morgan ran ahead of Clark in the direction of the shooting, and that Embry and Morgan had to run ahead because Embry had to retrieve the gun from Parker's car. The offer of proof also detailed that Parker reported his car stolen just hours after the shooting. The State reasoned that the gang evidence was the "glue that holds [the State's theory] together." 1 VRP at 39.

REPORT AND RECOMMENDATION - 6

The trial court initially determined that, although the State's offer connected the defendants, their gang activity, and the crime, the likelihood of undue prejudice outweighed its probative value. The State immediately moved for reconsideration. The State offered photographs from the defendants' MySpace pages, picturing them together among others—Hilltop Crips and Hoover Crips—flashing their gang signs. After reviewing these photographs, the trial court found increased probative value and reconsidered its ruling, determining that "the photographs I think tip the matters considerably." 1 VRP at 131. The court then allowed evidence of the defendants' gang affiliation under ER 404(b).

The trial court also heard arguments relating to how the State would present the video footage, as the State intended for Detective Ringer to play the video to the jury and narrate. The court determined that Detective Ringer could narrate the footage, but that "testimony should be limited to who the players are" in what he observed. 1 VRP at 123. The court barred him from rendering opinions speculating what people are pictured doing. The court also allowed Detective Ringer to testify as a gang expert for purposes of explaining gang culture, though he could only testify as a "fact witness" regarding his observations on the video. 8 VRP at 1332.

At trial, Detective Ringer testified as both an expert on gang culture and as a fact witness narrating the video; and, he detailed his investigation relating to this incident. He recalled a meeting with Morgan at the Tacoma police station in which he played Morgan the surveillance video. Detective Ringer testified that after watching the video, Morgan stated, "That is what it is right there.... Can't do anything but go to trial with that." 7 VRP at 1261. Ringer testified that Morgan "made it clear that the code he was raised with would not allow him to cooperate or testify against others." 7 VRP at 1261.

Embry was the only defendant to testify at trial. He testified that, when Detective Ringer questioned him about the shooting at McCabe's, he responded, "I don't know nothing, I didn't do nothing, and I wouldn't tell you if I did." 9 VRP at 1529.

Then, at one point during closing argument the State said, "Law enforcement did a great job investigating this case." 10 VRP at 1613. The State also discussed gang culture:

Code of the street is garbage. Code of the street: Don't cooperate with the police. Shoot people. Kill people. In this scenario, don't talk to the police about it.

Well, any criminal, of course, committing an act won't talk to the police. That makes sense because they are going to jail. They're going to be held accountable.

1

2

10 VRP at 1598.

3

The jury found each of the defendants guilty on all charges, and answered affirmatively on the firearm enhancements. Embry, Parker, and Morgan timely appeal.

4

5

Dkt. 19, Exhibit 3, Published Opinion, at 2-9; *State v. Embry,* 171 Wn. App. 714, 287 P. 3d 648

6

(2012) (some footnotes omitted).

7

## STATE PROCEDURAL HISTORY

8

Through counsel, petitioner appealed to the Washington Court of Appeals wherein he

9

asserted: (1) ineffective assistance of counsel; (2) the trial court abused its discretion when it

10

admitted testimony of expert Detective John Ringer; (3) the trial court allowed the state to

11

convict petitioner based on unclear jury instructions; (4) prosecutorial misconduct based on

12

statements made related to Detective John Ringer's credibility and evidence that a witness knew

13

petitioner; (5) insufficient evidence of attempted first degree murder.  Dkt. 19, Exhibits 4A at i-

14

ii. Petitioner also submitted a statement of additional grounds of review asserting claims of (1)

15

prosecutorial misconduct for referring to petitioner and co-defendants as animals during closing

16

argument and (2) prosecutorial misconduct related to evidence obtained from victim Mr. Tyrick

17

Clark. Dkt. 19, Exhibit 5.  In his opening brief, petitioner stated that he incorporated by reference

18

the arguments in co-defendant Bryant Morgan's opening brief, with regard to the admission of

19

gang evidence. Dkt. 19, Exhibit 4A at 38; Exhibit 4B. Also, in the section addressing petitioner's

20

cumulative error claim (not raised in this habeas petition), petitioner adopted and incorporated all

21

relevant facts and legal arguments in the briefs of co-defendants Morgan and Randall Embry.

22

Dkt. 19, Exhibit 4A at 52.

23

24

1    On appeal, the court reversed petitioner's conviction for first degree unlawful

2    possession of a firearm for insufficient evidence but affirmed in all other aspects. *Id.*, Exhibit 3 at

3    2. Petitioner filed a motion for reconsideration that was missing from the Washington Court of

4    Appeals file.  *See generally* Dkt. 19. The court denied petitioner's motion for reconsideration.

5    *Id.*, Exhibit 8.

6    Petitioner, through counsel, petitioned for review in the Washington Supreme Court

7    wherein petitioner asserted the following issues: (1) admissibility of gang evidence and (2)

8    insufficient evidence to support a conviction for attempted first degree murder.  *Id.*, Exhibit 9A

9    at 1.  In this petition, petitioner incorporated by reference all arguments in Morgan's petition for

10    review. *Id.* at 2, 5; Exhibit 9B. Morgan asserted the same two issues. *Id.* at i-ii.  The Washington

11    Supreme Court denied review without comment on May 1, 2013. *Id.* at Exhibit 10. The Court of

12    Appeals issued its mandate on May 23, 2013. *Id.,* Exhibit 11. Petitioner was resentenced,

13    following remand, on July 5, 2013. *Id.*, Exhibit 1.

14    Through counsel, petitioner appealed his resentencing, claiming that he was denied his

15    right to be represented by private counsel at the sentencing hearing. *Id.*, Exhibit 12. In an

16    unpublished opinion, the court affirmed the trial court's resentencing. *Id.*, Exhibit 14.  Petitioner

17    did not seek review in the state's highest court. The Washington Court of Appeals issued its

18    mandate on February 19, 2015. *Id.*, Exhibit 15.

19    In April 2014, *pro se*, petitioner filed a collateral attack of his sentence with the

20    Washington Court of Appeals – his Personal Restraint Petition – claiming that the prosecutor

21    failed to disclose exculpatory evidence. *Id.,* Exhibits 16, 17. The court denied his petition. *Id.,*

22    Exhibit 20. Petitioner did not seek review in the state's highest court. The Washington Court of

23    Appeals issued its certificate of finality on March 20, 2015. *Id.,* Exhibit 21.

24

1                                 **EVIDENTIARY HEARING**

2         The decision to hold a hearing is committed to the Court's discretion. *Schriro v.*

3 *Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

4 could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

5 the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether

6 relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before

7 the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the

8 allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S.

9 at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise

10 precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see*

11 *also Cullen,* 131 S. Ct. 1388 (2011). "[A]n evidentiary hearing is not required on issues that can

12 be resolved by reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th

13 Cir. 1998).

14         Petitioner's habeas claims raise only question of law and may be resolved by a review of

15 the existing state court record. Therefore, the Court finds it unnecessary to hold an evidentiary

16 hearing.

17                                    **DISCUSSION**

18         A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

19 merits in the state courts unless the adjudication either: (1) resulted in a decision that was

20 contrary to, or involved an unreasonable application of, clearly established federal law, as

21 determined by the Supreme Court; or (2) resulted in a decision that was based on an

22 unreasonable determination of the facts in light of the evidence presented to the state courts. 28

23 U.S.C. § 2254(d). Further, a determination of a factual issue by a state court shall be presumed

24

1    correct, and the applicant has the burden of rebutting the presumption of correctness by clear and

2    convincing evidence.  28 U.S.C. § 2254(e)(1).

3         Petitioner presents the Court with three grounds for relief, which are summarized as

4    follows:

5         1.   Ground 1: Insufficient evidence to support a guilty verdict of attempted first
               degree murder: It was never proven that petitioner took a substantial step towards
6              commission of the crime. Petitioner's firearm charge was dismissed on appeal due
               to insufficient evidence and the firearm was the "link to the crime." Dkt. 4 at 5.

7
          2.   Ground 2: Gang evidence was wrongfully admitted at trial and was prejudicial. *Id.*
8              at 7.

9         3.   Ground 3: Prosecutorial misconduct: During closing argument, the prosecutor
               referred to petitioner and his co-defendants as being a "pack of wolves." The trial
10             court had ordered the prosecutor in pretrial proceedings not to refer to the
               defendants as any type of animal. *Id.* at 8.

11
     Respondent argues that all three grounds for relief are unexhausted and procedurally barred.

12   Dkts. 19, 24. Respondent also argues that even if petitioner sufficiently exhausted ground one,

13   petitioner's claim fails on the merits. Dkt. 24 at 7.

14        **A.      Exhaustion**

15        A state prisoner seeking habeas corpus relief in federal court must exhaust available state

16   relief prior to filing a petition in federal court. *See* 28 U.S.C. § 2254. As a threshold issue the

17   court must determine whether or not petitioner has properly presented the federal habeas claims

18   to the state courts. 28 U.S.C. § 2254(b)(1) states, in pertinent part:  (b)(1) An application for a

19   writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court

20   shall not be granted unless it appears that: (A) the applicant has exhausted the remedies available

21   in the courts of the state; or (B)(i) there is an absence of available state corrective process; or (ii)

22   circumstances exist that render such process ineffective to protect the rights of the applicant. If

23

24

1 | respondent intends to waive the defense of failure to exhaust state remedies, respondent must do

2 | so explicitly.  28 U.S.C. § 2254 (b)(3).

3 |       Claims for relief that have not been exhausted in state court are not cognizable in a

4 | federal habeas corpus petition. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994).  A petitioner must

5 | properly raise a habeas claim at every level of the state courts' review.  *See Ortberg v. Moody*,

6 | 961 F.2d 135, 138 (9th Cir. 1992).  "[S]tate prisoners must give the state courts one full

7 | opportunity to resolve any constitutional issues by invoking one complete round of the State's

8 | established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *See*

9 | *also Rose v. Lundy*, 455 U.S. 509, 518-19 (1982).  A complete round of the state's established

10 | review process includes presentation of a petitioner's claims to the state's highest court. *James*,

11 | 24 F.3d at 24.

12 |       "Fair presentation" requires that the prisoner alert the state courts to the fact that he is

13 | asserting claims under the United States Constitution. *Duncan v. Henry*, 513 U.S. 364, 365

14 | (1995).  The prisoner must specifically characterize his claims as federal claims, either by

15 | referencing specific constitutional provisions or by citing to relevant federal case law. *Lyons v.*

16 | *Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *opinion amended*, 247 F.3d 904 (9th Cir. 2001).

17 | The prisoner also "must describe in the state court proceedings both the operative facts and the

18 | federal legal theory on which his claim is based." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

19 | General appeals to broad constitutional principles such as due process, equal protection, or the

20 | right to a fair trial are not sufficient. *Hiivala v. Wood*, 195 F. 3d 1098, 1106 (9th Cir. 1999). Nor

21 | is it enough that all the facts necessary to support the federal claim were before the state courts or

22 | that a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365 (*citing Picard v.*

23 | *Connor*, 404 U.S. 270, 275 (1971) *and Anderson v. Harless*, 459 U.S. 4 (1982)). A petitioner can

24 |

1  satisfy the exhaustion requirement by providing the highest state court with a full and fair

2  opportunity to consider all claims before presenting them to the federal court.  *Picard v. Connor*,

3  404 U.S. 270, 276 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985).  Full and fair

4  presentation of claims to the state court requires "full factual development" of the claims in that

5  forum.  *Kenney v. Tamayo-Reyes*, 504 U.S. 1, 8 (1992).

6          Underlying the exhaustion requirement is the principle that, as a matter of comity, state

7  courts must be afforded "the first opportunity to remedy a constitutional violation." *Sweet v.*

8  *Cupp*, 640 F.2d 233, 236 (9th Cir. 1981). The exhaustion requirement has long been recognized

9  as "one of the pillars of federal habeas corpus jurisprudence." *Jackson v. Roe*, 425 F.3d 654, 657

10  (9th Cir. 2005) (citation omitted). "Exhaustion demands more than drive-by citation, detached

11  from any articulation of an underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d

12  993, 1003 (9th Cir. 2005). To exhaust a claim, the petitioner must have presented his federal

13  constitutional issue before the appropriate state court "within the four corners of his appellate

14  briefing." *Id.; see also Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988) ("[T]he exhaustion

15  doctrine requires a habeas applicant to do more than scatter some makeshift needles in the

16  haystack of the state court record. The ground relied upon must be presented face-up and

17  squarely; the federal question must be plainly defined. Oblique references which hint that a

18  theory may be lurking in the woodwork will not turn the trick."); *U.S. v. Dunkel,* 927 F.2d 955,

19  956, (7th Cir. 1991) ("Judges are not like pigs hunting for truffles buried in briefs"); *Casella v.*

20  *Clemons,* 207 F.3d 18, 21 (1st Cir. 2000) ("an isolated federal-law bloom in a garden thick with

21  state-law references" will not serve to exhaust; "the proponent must have presented the federal

22  claim to the state courts unveiled").

23      **1. Ground 1 – Insufficient evidence of attempted first degree murder**

24

1          a.   Washington Court of Appeals

2          Petitioner raised his claim of insufficient evidence of attempted first degree murder in

3    the Washington Court of Appeals. However, he relied entirely on Washington statutes and state

4    court cases relating to the sufficiency of evidence required to support a conviction. Dkt. 19,

5    Exhibit 4A at 45-51. In his appellate brief, petitioner did not invoke a "federal legal theory on

6    which his claim is based." *See Anderson*, 459 U.S. at 6. This, by itself, is insufficient to exhaust

7    the claim for purposes of federal habeas corpus proceedings.

8          In the cumulative error section of petitioner's brief, petitioner adopted and

9    incorporated by reference all arguments raised in co-defendants Morgan and Embry's briefs. *Id.,*

10   Exhibit 4A at 52. Embry raised an insufficient evidence claim as to Embry's conviction of

11   conspiracy to commit first degree murder on state-law grounds only. Dkt. 22, Exhibit 23 at 34-

12   36. Morgan raised an insufficient evidence claim as to Morgan's conviction for attempted first

13   degree murder under federal law citing to several U.S. Supreme Court cases for the general

14   proposition that due process requires the government to prove that a defendant is convicted

15   beyond a reasonable doubt. *Id.*, Exhibit 4B at 29-36. The Washington Court of Appeals only

16   dealt with petitioner's issues as they related to an interpretation of state law and did not address

17   any federal constitutional issues. Dkt. 19, Exhibit 3 at 21-27.

18          b.   Washington Supreme Court

19          In his petition for review with the Washington Supreme Court, petitioner raised the

20   claim of insufficient evidence of attempted first degree murder but again did not cite to any

21   federal law. Dkt. 19, Exhibit 9A at 5. However, petitioner again adopted and incorporated all

22   arguments in co-defendant Morgan's petition for review, *id.*, Exhibit 9A at 2, and stated "the

23   case law is adequately set forth in Mr. Morgan's motion for discretionary review that has been

24

1   adopted herein," *id.* at 5. Morgan raised the claim under federal law. Dkt. 19, 9B at 19 (*citing*

2   *Jackson v. Virginia,* 443 U.S. 307, 318 (1979) and *In re Winship,* 397 U.S. 358 (1970)).  The

3   Washington Supreme Court denied review. Dkt. 19, Exhibit 10.

4          c.   <u>Exhaustion and Incorporation by Reference</u>

5        Here, petitioner's case was consolidated with co-defendants Morgan and Embry. *See* Dkt

6   19, Exhibit 3 at 1, 9. In his cumulative error claim on appeal, petitioner incorporated by reference

7   all relevant facts and legal arguments raised by Morgan and Embry pursuant to RAP 10.1(g)

8   which provides that "[i]n cases consolidated for the purpose of review and in a case with more

9   than one party to a side, a party may (1) join with one or more other parties in a single brief, or

10   (2) file a separate brief and adopt by reference any part of the brief of another." *See* Dkt. 19,

11   Exhibit 4A at 52; Exhibit 9A at 2, 5. *See also* Fed. R. App. P. 28(i); Wash. R. App. P. 10.1(g).

12        As  previously stated  in the Court's order to expand the record, the Court finds that the

13   federal and state law rules of appellate procedure allow petitioner to adopt and incorporate by

14   reference co-defendants' briefs in a consolidated case. *See* Dkt. 21 at 2. The Court notes that

15   respondent argues that because the incorporation was included in petitioner's cumulative error

16   claim, the incorporation does not apply to petitioner's three habeas claims, none of which raise a

17   cumulative error claim. However, the Court finds that petitioner's statement in his appellate brief

18   that "[p]ursuant to RAP 10.1(g)(2) Mr. Parker adopts and incorporates by reference all relevant

19   facts and legal arguments presented in the briefs of codefendants Morgan and Embry," *see* Dkt.

20   19, Exhibit 4A at 52, is sufficient incorporate by reference all of the co-defendants' arguments,

21   not only the cumulative error claim. First, RAP 10.1 specifically allows parties in consolidated

22   cases to "file a separate brief and adopt by reference any part of the brief of another." *See* Wash.

23   R. App. P. 10.1(g).  Although the incorporation by reference was provided for in the cumulative

24

1   error section of petitioner's appellate brief, petitioner's appellate brief did not specifically adopt

2   by reference only the cumulative error claim, rather, petitioner incorporated by reference "all

3   relevant facts and legal arguments." *See* Dkt. 19, Exhibit 4A at 52. Second, the Washington

4   Court of Appeals considered the briefs of all three co-defendants in a single opinion and

5   repeatedly referenced the co-defendants together. Dkt. 19, Exhibit 3 at 2, 24, 26.

6          Therefore, the question now before the Court is whether or not incorporating a co-

7   defendants' federal law claim into petitioner's own appeal is sufficient to exhaust the federal law

8   claim for purposes of federal habeas corpus proceedings.  This Court concludes that in this case,

9   it is not. The Supreme Court did not specifically address the effect of incorporation by reference

10  in *Baldwin v. Reese*, 541 U.S. 27, 31-32 (2004), however, it did state that the exhaustion

11  requirement is not satisfied if the state court must "read beyond a petition or brief (or a similar

12  document)," such as lower court opinions, in order to discover the federal claim. *Id.* ("a state

13  prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition

14  or a brief (or a similar document) that does not alert it to the presence of a federal claim in order

15  to find material, such as a lower court opinion in the case, that does so."); *See also* Federal

16  Habeas Manual Ch. 9C Summary.

17         Lower courts have ruled that a general incorporation by reference will not satisfy

18  exhaustion when state law prohibits incorporation by reference. *See* Federal Habeas Manual Ch.

19  9C Summary.  For example, trial court briefs cannot be incorporated into appellate briefs by

20  reference and thus, petitioner failed to exhaust his claim. *Breimon v. Uttecht,* 2012 WL 3637692,

21  at *10 (W.D. Wash. June 27, 2012) *report and recommendation adopted,* 2012 WL 3637689

22  (W.D. Wash. Aug. 23, 2012) (*citing Holland v. City of Tacoma,* 90 Wash. App. 533, 538 (1998),

23  *review denied,* 136 Wash.2d 1015 (1998)). *See also Gatlin v. Madding*, 189 F.3d 882, 888 (9th

24

1   Cir. 1999); *People v. McRae*, 256 Cal. App. 2d 95, 101 (1st Dist. 1967)) (California Rule of

2   Court 28.1(e)(2) (formerly Rule 28(e)(5)) prohibits incorporation by reference of authorities or

3   arguments from another document.).

4   However, in circumstances where the state law does not restrict incorporation by

5   reference, courts have held that incorporation by reference can satisfy exhaustion. *See, e.g.,*

6   *Insyxiengmay v. Morgan*, 403 F.3d 657, 668–69 (9th Cir. 2005) (where Washington law only

7   prohibited incorporation by reference of documents that had not been filed with the court, the

8   exhaustion requirement was satisfied where an appendix attached to a motion for discretionary

9   review of the denial of the petitioner's state habeas petition, which was filed with the Washington

10  Supreme Court, contained a copy of the state petition asserting the claims); *accord Scott v.*

11  *Schriro*, 567 F.3d 573, 582-83 (9th Cir. 2009), *cert. denied,* 130 S. Ct. 1014 (2009) (*per curiam*)

12  (fair presentment requirement satisfied where petitioner included his ineffective assistance of

13  counsel claims in the appendix to his state petition for review).[4] *See also* Federal Habeas Manual

14  Ch. 9C Summary.

15  However, both *Insyxiengmay* and *Scott* involved incorporation of appendices that were

16  actually attached to a petitioner's brief, and the court was not required to "read beyond the

17  petition or brief (or a similar document)." *Baldwin v. Reese*, 541 U.S. at 31-32; *see*

18  *Insyxiengmay*, 403 F.3d at 668–69; *Scott*, 567 F.3d at 582-83.  Here, in order to uncover

19  petitioner's federal law claim, the Washington Court of Appeals would have been required to

20  read co-defendant Morgan's brief and then apply petitioner's set of facts to Morgan's federal

21

22  _____

23  [4] The Court notes that the Ninth Circuit issued an unpublished opinion holding that " '[i]ncorporation by reference' is insufficient to exhaust a constitutional claim before a state supreme court." *Gonzalez v. Morgan,* 127 F. App'x 243, 246-47 (9th Cir. 2005), *cert. denied,* 126 S. Ct. 144 (2005). However, pursuant to Ninth Circuit Rule 36-3, unpublished opinions issued before January 1, 2007 may not be cited, except in limited circumstances that do not

24  apply in this case.

1  legal analysis. However, "[e]xhaustion demands more than drive-by citation, detached from any

2  articulation of an underlying federal legal theory" and the federal constitutional issue must be

3  presented "within the four corners of his appellate briefing." *Castillo,* 399 F.3d at 1003; *see also*

4  *Martens*, 836 F.2d at 717; *Casella,* 207 F.3d at 21. While a federal constitutional claim may be

5  referenced in Morgan's brief, it was not applied to the particular facts as they relate to

6  petitioner's claim and thus, petitioner's own appeal did not "include reference to a specific

7  federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to

8  relief." *Gray,* 518 U.S. at 163 (1996). Further, it is not enough that all the facts necessary to

9  support the federal claim were before the state court in petitioner's appeal or that a somewhat

10  similar state law claim was made. *See Duncan*, 513 U.S. at 365.

11      The Court also notes that, while not dispositive of the exhaustion issue, the Washington

12  Court of Appeals did not evaluate petitioner's insufficient evidence claim as a federal law claim.

13  *See Castille v. Peoples*, 489 U.S. 346, 350–51 (1989) (if the federal claim was properly presented

14  to the state's highest court, the court's failure to address the claim does not render it

15  unexhausted); Dkt. 19, Exhibit 3 at 21-27.  However, this shows that the state court did not

16  clearly view petitioner's claim as a federal constitutional claim.

17      In sum, the Court cannot say that the Washington Court of Appeals was fairly presented

18  with petitioner's federal constitutional claim. *See Duncan*, 513 U.S. at 365. Consequently, the

19  Court concludes that petitioner did not properly exhaust ground one of his petition. As the

20  exhaustion issue presented a close call, the Court also considers this claim on the merits, as

21  discussed below.

22

23  **2. Ground 2 – Admission of gang-related evidence**

24

1    Petitioner raised ground two in the Washington Court of Appeals on direct appeal but

2  solely referenced Washington state law in asserting his claim. Dkt. 19, Exhibit 4A at 38-39

3  (relying Washington state court cases interpreting the unfair prejudice of gang evidence). In his

4  petition for review with the Washington Supreme Court, petitioner raised the gang evidence

5  claim but failed to cite any federal law. Dkt. 19, Exhibit 9A at 5.

6    Even if petitioner could exhaust this claim through incorporation by reference of his co-

7  defendants' briefs, petitioner, Embry, and Morgan all failed to invoke one complete round of

8  appellate review. *See Ortberg* 961 F.2d at 138; *O'Sullivan*, 526 U.S. at 84. Petitioner failed to

9  raise the claim on federal grounds before the Washington Court of Appeals or Washington

10  Supreme Court. Dkt. 19, Exhibit 4A at 38-39; Dkt. 19, Exhibit 9A at 5. In addition, petitioner's

11  broad claim of insufficient evidence cannot be read to sufficiently raise a federal constitutional

12  issue. *See Shumway,* 223 F.3d at 982. Embry failed to raise the claim on federal grounds before

13  the Washington Court of Appeals and did not seek review by the Washington Supreme Court.

14  Dkt. 22, Exhibit 23 at 12-34.  Morgan failed to raise the issue on federal grounds before the

15  Washington Supreme Court. Dkt. 19, Exhibit 9A at 2; Exhibit 9B at 6-17.   Therefore, petitioner

16  failed to exhaust his state court remedies with respect to ground two.

17    **3.  Ground 3 – Prosecutorial Misconduct related to the prosecutor's reference to**
     **petitioner and co-defendants as a "pack of wolves"**
18

19    Petitioner raised ground three in his statement of additional grounds for review on direct

20  appeal to the Washington Court of Appeals but failed to specifically refer to any federal

21  constitutional issues and in fact, failed to reference any law at all. Dkt. 19; Exhibit 5. In his

22  petition for review to the Washington Supreme Court, petitioner did not raise the prosecutorial

23  misconduct claim. *See* Dkt. 19, Exhibit 9A.

24

1    Even if petitioner could exhaust this claim through incorporation by reference of his co-

2    defendants' briefs, both Morgan and Embry failed to raise a prosecutorial misconduct claim

3    before the Washington Court of Appeals as to the "pack of wolves" statement. *See* Dkt. 19,

4    Exhibit 4B at 60-63 (Morgan alleged the prosecutor improperly vouched for the credibility of

5    police witnesses and attached Morgan's right to counsel); Dkt. 22, Exhibit 23 (Embry did not

6    raise a prosecutorial misconduct claim).

7    Because petitioner failed to reference a specific constitutional guarantee, he did not

8    "specifically characterize" his prosecutorial conduct claim as a federal claim. *See Lyons,* 232

9    F.3d at 670. Further, petitioner failed to present this claim to the Washington Supreme Court,

10   and did not exhaust his claim at every level of appeal in Washington state court. *See* Dkt. 19,

11   Exhibit 9A. Consequently, the Court concludes that petitioner did not properly exhaust ground

12   three of his petition.

13   **B.     Procedural Bar**

14   Respondent argues that because of the state rule prohibiting successive petitions,

15   petitioner's claims are procedurally barred under RCW 10.73.140 and RAP 16.4(d).

16   The procedural default concept is distinct from exhaustion in the habeas context.

17   *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002).  The exhaustion doctrine applies when

18   the state court has never been presented with an opportunity to consider a petitioner's claims and

19   that opportunity may still be available to the petitioner under state law.  28 U.S.C. § 2254(c).  In

20   contrast, the procedural default rule bars consideration of a federal claim when it is clear that the

21   state court has been presented with the federal claim but declined to reach the issue for

22   procedural reasons or it is clear that the state court would hold the claims procedurally barred.

23   *Franklin v. Johnson*, 290 F.3d at 1230-31.

24

1        Washington law prohibits the filing of successive collateral challenges. RCW 10.73.140;

2    RAP 16.4(d). "If a person has previously filed a petition for personal restraint, the court of

3    appeals will not consider the petition unless the person certifies that he or she has not filed a

4    previous petition on similar grounds, and shows good cause why the petitioner did not raise the

5    new grounds in the previous petition."

6        Petitioner previously filed one personal restraint petition with only one ground for relief,

7    a prosecutorial misconduct claim – different than the prosecutorial misconduct claim raised in

8    this habeas petition – based on the prosecuting attorney's failure to disclose exculpatory

9    photographs to the defense during trial. Dkt. 19, Exhibit 16; Exhibit 17; Exhibit 20.  Petitioner

10   did not, however, raise any of the grounds asserted in this habeas petition. *Id.*  The Washington

11   Court of Appeals denied his petition and he did not seek review in the Washington Supreme

12   Court. Dkt. 19, Exhibit 20. The Washington Court of Appeals issued its certificate of finality on

13   March 20, 2015. Dkt. 19, Exhibit 21. Because the Washington Court of Appeals ruled on his

14   petition, petitioner is barred from bringing a subsequent personal restraint petition under RCW

15   10.73.140, absent a showing of good cause. *See In re Personal Restraint Petition of Vazquez*,

16   108 Wash. App. 307, 308 (Wash. Ct. App. 2001).

17       Petitioner has not presented facts which could show good cause for his failure to raise his

18   habeas claims of insufficient evidence, gang evidence and prosecutorial misconduct related to

19   the prosecutor's "pack of wolves" reference in his first personal restraint petition. Petitioner was

20   aware of these claims prior to filing his first personal restraint petition, in fact, he raised these

21   claims throughout his appeal process before the Washington Court of Appeals and Washington

22   Supreme Court. *See* Dkt. 19, Exhibit 4A, Exhibit 5, Exhibit 9A. Thus, without a showing of good

23

24

cause, the Washington Court of Appeals would also hold the claim procedurally barred because a second personal restraint petition would be successive.

Petitioner would be precluded from raising his three unexhausted grounds for relief in the state court and therefore the claim is procedurally defaulted in federal court. *See Coleman*, 501 U.S. at 731-32, 735 n.1; *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim."). As grounds one, two, and three are procedurally defaulted, this Court is barred from reviewing the claim on the merits absent a showing of "cause and prejudice" or actual innocence.

The default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (*citing Coleman*, 501 U.S. at 750).

1.   Cause and Prejudice

To show cause in federal court, petitioner must show that some objective factor, external to the defense, prevented petitioner from complying with state procedural rules relating to the presentation of petitioner's claims. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (*citing Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A petitioner cannot demonstrate cause to excuse a procedural default where the cause is fairly attributable to the petitioner's own conduct. *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992). Examples which may satisfy "cause" include "interference by officials" that makes compliance with state procedural rules impracticable, "a

1  showing that the factual or legal basis for a claim was not reasonably available to counsel", or

2  "ineffective assistance of counsel." *McCleskey*, 499 U.S. at 494 (*citing Murray*, 477 U.S. at 488).

3  Here, petitioner has not alleged any facts that establish interference by officials, that the legal or

4  factual basis was unavailable to counsel or ineffective assistance of counsel. Petitioner simply

5  did not raise grounds one, two, or three under federal law at all levels of the state court.

6  Accordingly, petitioner has made no showing of cause or prejudice.

7     2.  Fundamental miscarriage of justice

8      Petitioner could overcome the procedural bar in this case if he could show a fundamental

9  miscarriage of justice would occur if his claim were not considered by the Court.  *Coleman v.*

10  *Thompson*, 501 U.S. 722, 750 (1991). The United States Supreme Court held that in order to

11  demonstrate that petitioner suffered a fundamental miscarriage of justice, petitioner must

12  establish that, viewing all the evidence in light of new reliable evidence, "it is more likely than

13  not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

14  *House v. Bell*, 547 U.S. 518, 537 (2006) (*citing Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

15      Petitioner did not present any new evidence demonstrating that it is more likely than not

16  that no reasonable juror would have convicted him in light of the new evidence. Therefore, there

17  is no fundamental miscarriage of justice.

18      Because petitioner cannot excuse his procedural default, grounds one, two, and three are

19  not cognizable in the habeas corpus proceeding and should therefore be dismissed.

20  **C.     Ground 1 – Merits: Insufficient Evidence**

21      Although this Court recommends that ground one be dismissed because petitioner failed

22  to exhaust the claim, this is a close question, and the Court will also evaluate the merits of

23  petitioner's claim. In ground one, petitioner argues that there was insufficient evidence to

24

1  support a guilty verdict of attempted first degree murder and that it was never proven that

2  petitioner took a substantial step towards commission of the crime. Dkt. 4 at 5. Petitioner

3  contends his firearm charge was dismissed on appeal due to insufficient evidence and the firearm

4  was the "link to the crime." *Id.* This claim was rejected by the Washington appellate courts.

5        When evaluating a claim of insufficiency of the evidence to support a conviction, the

6  question is not whether the Court itself believes the evidence establishes guilt.  "Instead, the

7  relevant question is whether . . . any rational trier of fact could have found the essential elements

8  of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

9  (emphasis in original); *Wright v. West*, 505 U.S. 277, 284 (1992).  The Court must "view the

10  record as a whole in the light most favorable to the prosecution." *Gordon v. Duran*, 895 F.2d

11  610, 612 (9th Cir.), *cert. denied*, 489 U.S. 1077 (1990).  The constitutional sufficiency of

12  evidence review is sharply limited.  *Wright*, 505 U.S. at 296.  The jury is entitled to believe the

13  State's evidence and disbelieve the defense's evidence.  *Id.*

14        Washington's test for determining the sufficiency of evidence is identical to that set forth

15  by the Supreme Court in *Jackson*.  In Washington, evidence is sufficient if after viewing the

16  evidence in the light most favorable to the state, any rational trier of fact could have found guilt

17  beyond a reasonable doubt.  *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980).  When

18  the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from

19  the evidence must be drawn in favor of the State and interpreted most strongly against the

20  defendant.  *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977).

21        In reviewing this issue on direct appeal the Washington Court of Appeals held:

22      The jury convicted both Morgan and Parker of attempting to commit first degree
    murder. State law defines criminal intent: "A person is guilty of an attempt to

23      commit a crime if, with intent to commit a specific crime, he or she does any act

24

which is a substantial step toward the commission of that crime." RCW 9A.28.020(1).

The State laid out the evidence supporting Morgan and Parker's conviction for attempted first degree murder. Both Clark and Hudson testified to the tension between Clark and Parker dating back to the New Year's morning fight. Witnesses testified that the defendants maintained an interest in a conversation at McCabe's involving Clark regarding the New Year's morning fight. Video footage showed the defendants standing outside McCabe's until Clark exited; then, Parker and Morgan briefly engaged one another before Morgan and Embry ran ahead of Clark and Crimmins toward the shooting scene. The video then shows Parker trailing them in the same general direction. Hudson testified that moments after the shooting, he saw Morgan running from the shooting scene; and, Hernandez testified that he saw Embry, with a gun, running from the scene with somebody else. The license plate and description of the getaway car was a near-exact match of Parker's car. Crimmins testified that she saw at least four people in the getaway car as it left the scene, and Walker testified that he saw men matching Morgan and Embry's descriptions get into the car before it drove away. After the shooting Parker called Borland to pick him up off Highway 512; he told her that his car had been stolen, but that he planned to tell police that it was stolen at her apartment. Finally, authorities found Parker's rental car in the Green River.

During closing, the State summarized its theory for the jury, saying that Morgan and Parker arrived together at McCabe's, and they all left at similar times, with Morgan and Embry running together out of the video toward the shooting, followed shortly thereafter by Parker. Throughout the night in McCabe's, the defendants had an interest in Clark's interactions with others. As McCabe's closed and patrons filed out into the parking lot, Embry, Morgan, and Parker all spoke with each other at various times, and the State theorized that as soon as he spotted Clark leave the club, Morgan approached Parker, took Parker's keys, and ran with Embry, ahead of Clark and Crimmins, to retrieve the gun. The State then argued that after Morgan and Embry retrieved the gun, Parker waited in his rental car for Embry and Morgan, so that they could load and quickly leave the scene.

Morgan and Parker's challenges admit the truth of the State's evidence and all reasonable inferences drawn from it. *See Theroff*, 25 Wn. App. at 593. Viewing the evidence in a light most favorable to the State, using the State's theory of the case, a rational trier of fact could have found the essential elements required to prove that Morgan and Parker acted as Embry's accomplices in an attempt to commit first degree murder.

Dkt. 19; Exhibit 3 at 24-26.

The Washington Court of Appeals made factual findings from its review of the state court record that petitioner cannot rebut by clear and convincing evidence. *See* 28 U.S.C. 2254(e)(1)

1   stating that factual findings made by state courts are presumed to be correct and the burden is on

2   the habeas petitioner to rebut this presumption by clear and convincing evidence.  The state court

3   reviewed the evidence at trial including Clark's testimony that there was tension between Clark

4   and petitioner which dated back to the New Year's morning fight. Dkt. 19, Exhibit 3 at 2. Further,

5   video footage showed petitioner standing outside of the bar with Morgan and Embry until Clark

6   exited. *Id.* at 25. The video also showed petitioner and Morgan talking to one another and after

7   Clark moved toward his car, Morgan and Embry moved more quickly ahead of Clark. *Id.* at 25;

8   Dkt. 25, Verbatim Report of Proceeding, Vol. 8 at 1365-66. After Morgan and Embry left the

9   area, petitioner ran behind Morgan and Embry toward the shooting scene. *Id.* at  1367. Dkt. 19,

10  Exhibit 3 at 2.

11      Furthermore, the court of appeals examined evidence and petitioner's actions after the

12  shooting. The license plate and description of the getaway car was a near-exact match of

13  petitioner's rental car. *Id.* at 25. After the shooting petitioner asked to be picked up off Highway

14  512 and told his girlfriend that his car had been stolen. *Id.*  However, petitioner planned to tell

15  police that it was stolen at his girlfriend's apartment. *Id.*  Finally, petitioner's rental car was found

16  in the Green River. *Id.* The Washington appellate court concluded that when the facts were

17  viewed in the light most favorable to the state, there was sufficient evidence from which the jury

18  could find that petitioner acted as an accomplice to attempted first degree murder.  *Id.* at 26.

19      If the court chooses to review the merits of petitioner's first claim, then this Court

20  concludes that petitioner has failed to show that the state appellate courts' adjudication of this

21  claim was contrary, to or an unreasonable application of clearly established federal law and

22  recommends that federal habeas relief on this claim be denied.

23

24

1    **D.      Certificate of Appealability**

2        A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

3    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

4    (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

5    has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

6    2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

7    disagree with the district court's resolution of his constitutional claims or that jurists could

8    conclude the issues presented are adequate to deserve encouragement to proceed further."

9    *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

10   (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

11   certificate of appealability with respect to this petition.

12                                    **CONCLUSION**

13       Petitioner failed to fairly present grounds one, two, and three under federal law by

14   invoking one complete round of Washington state court appellate review and therefore, has not

15   exhausted his state remedies as to grounds one, two and three. Furthermore, petitioner has

16   already filed one personal restraint petition and does not demonstrate cause and prejudice or a

17   fundamental miscarriage of justice; therefore, he is procedurally barred from filing another

18   collateral challenge. Accordingly, the undersigned recommends dismissing grounds one, two,

19   and three as unexhausted and procedurally barred.

20       Although this Court recommends that ground one be dismissed because petitioner failed

21   to exhaust the claim and is procedurally barred from another collateral challenge, the Court also

22   evaluated the merits of ground one and finds that petitioner also failed to show that the state

23   appellate courts' adjudication of ground one was contrary to, or an unreasonable application of,

24

REPORT AND RECOMMENDATION - 27

1   clearly established federal law. The undersigned also recommends denying the issuance of a

2   certificate of appealability.

3          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

5   6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

6   review by the district judge.  *See* 28 U.S.C. § 636(b)(1)(C).  Accommodating the time limit

7   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

8   November 20, 2015, as noted in the caption.

9          Dated this 26th day of October, 2015.

10

11          _____

12          J. Richard Creatura
            United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24